# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Victor Bigman,<br>Movant/Defendant<br>-vs-<br>United States of America,<br>Respondent/Plaintiff. | CV-16-8122-PCT-JAT (JFM)<br>CR-11-8156-PCT-JAT<br>**Report & Recommendation<br>on Motion to Vacate, Set Aside<br>or Correct Sentence** |

## I. MATTER UNDER CONSIDERATION

Movant, following his conviction in the United States District Court for the District of Arizona, filed an Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 on July 11, 2016 (Doc. 4). On October 6, 2016, Respondent filed its Response (Doc. 8). Movant did not file a reply. On March 15, 2017, Movant filed a Response to Order to Show Cause (Doc. 11), to which Respondent replied on March 23, 2017 (Doc. 12).

The Movant's Motion is now ripe for consideration. Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 10, Rules Governing Section 2255 Cases , Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
### A. FACTUAL BACKGROUND AND PROCEEDINGS AT TRIAL

On July 20, 2011, Movant was indicted on one count of first degree murder, and one count of discharging a firearm during a crime of violence, both arising out of the death of Navajo Nation police officer. (CR Doc. 16.) (Filings in the underlying criminal

1

case, CR-11-8156-PCT-JAT, are referenced herein as "CR Doc. ___." Exhibits to the Response, Doc. 8, are referenced herein as "Exhibit ___.")

Movant eventually entered into written Plea Agreement (CR Doc. 74) wherein he agreed to plead to the lesser included offense of 2nd Degree Murder, with the following stipulation: "Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the United States and the defendant stipulate that the defendant's sentence shall be no less than 25 years and no more than 35 years." (Plea Agreement, CR Doc. 59 at 2.) The parties further agreed that Movant was eligible for a three level downward adjustment for acceptance of responsibility, and that the remaining count would be dismissed. The Plea Agreement further included a waiver of "any right to file an appeal, any collateral attack, and any other writ or motion that challenges the conviction…the entry of judgment against the defendant, or any aspect of the defendant's sentence, including the manner in which the sentence is determined, including but not limited to any appeals under 18 U.S.C. § 3742 and motions under 28 U.S.C. §§ 2241 and 2255." (*Id.* at 3.)

Movant entered his plea pursuant to the Plea Agreement on April 5, 2012. (Exhibit A, R.T. 4/5/12.) At the colloquy, the magistrate judge confirmed with Movant that there were no additional agreements or promises made outside the plea agreement:

> THE COURT: Did you read this plea agreement?
> THE DEFENDANT: Yes, I've read it.
> THE COURT: Have you discussed it with your lawyer?
> THE DEFENDANT: Yes, I have.
> THE COURT: Did you sign it?
> THE DEFENDANT: Yes, I did.
> THE COURT: Do you understand your plea agreement?
> THE DEFENDANT: Yes, I do.
> THE COURT: Have you been promised anything that is not contained in your written plea agreement?
> THE DEFENDANT: No.

(*Id.* at 5.)

The magistrate judge also reviewed with Movant that the maximum possible sentence was life in prison (*id.* at 7), and the stipulations regarding sentencing:

> THE COURT: The judge in determining your sentence is required to consider the United States Sentencing Guidelines. They are only advisory, however, and after considering them, the Court is

2

>                    free to impose any sentence so long as it's a legal sentence
>                    supported by reasonable facts.
>                         Even though they are just advisory, and I know your plea
>                    agreement is a stipulated plea agreement with respect to the term,
>                    even though they are just advisory, the judge will be deciding using
>                    the guidelines for at least two reasons. One, to determine whether to
>                    accept this plea at all, which Judge Teilborg doesn't have to do. He
>                    can reject this plea agreement for any reason. And, two, in
>                    determining what sentence to impose within the stipulated range,
>                    the judge will look at the guidelines so even though they are just
>                    advisory, it's important that you know how they work.
>                         Did you go through a sentencing table like the one in the
>                    courtroom with your lawyer?
>                         THE DEFENDANT: Yes, I have.
>                         THE COURT: Did he describe to you how he believed the
>                    guidelines would interact with that sentencing table in determining
>                    your advisory sentence?
>                         THE DEFENDANT: Yes, he did.
>                         THE WITNESS: Do you understand what he told you?
>                         THE DEFENDANT: Yes.
>                         THE COURT: Do you understand that whatever your lawyer
>                    or lawyers have told you, that is just their estimate of what the
>                    sentence will be. It's not a promise to any particular sentence that
>                    binds Judge Teilborg.
>                         THE DEFENDANT: Yes, I do.
>                         THE COURT: The agreements in your plea agreement with
>                    respect to sentencing are somewhat brief. They are on page two,
>                    lines 11 through 22. The stipulation that I alluded to with respect to
>                    the sentence is that you will be sentenced to a term of imprisonment
>                    of not less than 25 years but not more than 35 years. So the only
>                    discretion the judge has, if he accepts this plea agreement, is to give
>                    you a 25-year sentence or one up to 35 years.
>                         Is that your understanding?
>                         THE DEFENDANT: Yes, it is.

(*Id.* at 7-9.)

The Government moved for an upward departure to sentence Movant to 35 years in prison, arguing:

> In the case at bar, as is often the case regarding First Degree Murder cases, the defendant was afforded a very generous offer, that is, a plea offer that would someday possibly allow him to get out of prison. This plea offer assists the government by not requiring the government to proceed to trial. The plea offer also gives finality to the victim's family. However, U.S.S.G. 5K2.21 allows this court to consider the benefit that the defendant has received as a result of that plea offer and to use that fact as a basis for an upward departure. This upward departure does not deprive the defendant of the benefit of his plea agreement: defendant agreed to be sentenced to as much as 35 years in prison. Even a prison sentence of 35 years is better than a sentence of life without the possibility of parole.

(CR Doc. 71, Motion for Upward Departure, at 5.)   The Government also argued for an

upward departure pursuant to U.S.S.G. § 5K2.6 based on the use of a firearm; and that the harsher sentence was justified under the sentencing factors in 18 U.S.C. § 3553.

Movant appeared for sentencing on July 23, 2012. (Exhibit C, R.T. 7/23/12.) The court accepted the probation officer's calculation of a base offense level 38, added six levels as a victim-related adjustment, deducted three levels for acceptance of responsibility, made a one level upward adjustment for uncharged conduct, resulting in a total offense level of 42, and a criminal history category 1, with a resulting range of 360 months to life. (*Id.* at 5-6.) Movant was sentenced to 420 months in prison (35 years), the maximum permitted under the Plea Agreement. (*Id.* at 30.) (*See also* Amended Judgment, CR Doc. 78.)

**B.  PROCEEDINGS ON DIRECT APPEAL**

Movant did not file a direct appeal. (Amended Motion, Doc. 4 at 2.)

**C.  PRESENT PROCEEDINGS**

**Motion** – Movant commenced the current case by filing his original "Motion to Compel Specific Performance of a Plea Agreement" (Doc. 1) on March 28, 2016. On June 22, 2016, the Court construed the motion as one brought pursuant to 28 U.S.C. § 2255, gave Movant an opportunity to withdraw the motion or file an amended motion, with the intent to deny the motion if not withdrawn or amended. (Order 6/22/16, Doc. 3.)

On July 11, 2016, Movant filed the instant Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Movant asserts the following grounds for relief:

> Ground One: "Counsel was ineffective for failing to argue that the Government breached the plea agreement signed with [Movant]. The Government agreed to recommend a sentence of 25 years, however, at sentencing they argued for a sentence of 35 years. [Movant did] not receive the benefit of his bargain, and is seeking specific performance of the plea."
> Ground Two: "Counsel was ineffective for allowing [Movant] to be sentenced and sign a ple[a] on the basis of

> inaccurate information. The factual resume states that [Movant] went into the house and loaded the gun but the gun was in fact already loaded. [Movant] had a due process right to sign a plea and to be sentenced on the basis of accurate information. Counsel was ineffective for this reason."
>
> Ground Three: "The plea was involuntary because it was made when [Movant] was under the influence of medication. [Movant] was unable to think clearly because of the medication. The plea was therefore involuntary."

(Order 9/21/16, Doc. 6 at 2.) The Court directed service and a response, and provided "Movant may file a reply within 30 days from the date of service of the answer to the Amended § 2255 Motion." (*Id.* at 3.)

**Response** - On October 6, 2016, Respondent filed their Response (Doc. 8). Respondents argue that Movant waived his right to bring the instant Motion (*id.* at 2), and that his claims are without merit (*id.* at 2-8).

**Reply** – Movant was given through November 10, 2016 to reply. (Order 10/12/16, Doc. 9.) Movant did not file a reply.

**OSC re Timeliness** – On March 2, 2017, the Court preliminarily determined that Movant's statute of limitations expired on October 9, 2013, and ordered Movant to show cause why his Motion should not be dismissed as untimely. (Doc. 10.)

On March 15, 2017, Movant responded (Doc. 11), arguing that his motion was timely because he had "placed a 2255 motion in the prison mailbox on July 11, 2013." (*Id.* at 1.)

On March 23, 2017, Respondent replied (Doc. 12), arguing that Movant's motion was not dated until 2016, and thus could not have been placed in the mail in 2013.

### III. APPLICATION OF LAW TO FACTS
### A. TIMELINESS

**Statute of Limitations** - As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for motions to vacate filed pursuant to 28 U.S.C. § 2255. The statute of limitations applicable to habeas proceedings by federal prisoners has been codified at 28 U.S.C. § 2255(f), which generally provides that motions to vacate filed beyond the one

5

year limitations period are barred and must be dismissed. *Id.*

**Properly Raised Sua Sponte** - Respondent did not rely upon the statute of limitations in its Response, but agrees with the Court that Movant's motion is untimely. The Court may raise the statute of limitations *sua sponte,* so long as it makes clear the application of the statute, provides the Movant the opportunity to respond, and makes clear the consequences of failing to respond. *See Herbst v. Cook*, 260 F.3d 1039, 1042 (9th Cir. 2001) (*sua sponte* raising of statute of limitations on state habeas petition); *United States v. Garcia*, 210 F.3d 1058, 1060 (9th Cir.2000) (stating that the statute of limitations period for § 2254 petitions and § 2255 motions is not treated differently). *See also United States v. Bendolph*, 409 F.3d 155, 164 (3d Cir. 2005).

The Court's Order filed March 2, 2017 (Doc. 10) provided just such a notice and opportunity to Movant.

**Commencement** - A federal habeas petitioner's time to file under 28 U.S.C. §2255 generally begins to run on "the day on which the judgment of conviction becomes final." 28 U.S.C. §2255(f).[1] Although §2255 does not define "final", the Supreme Court has applied its ordinary standard of finality. "Finality attaches when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003). Where a movant did not file a direct appeal, "the statute of limitations within which she had to file her § 2255 motion began to run upon the expiration of the time during which she could have sought review by direct appeal." *United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2001).

Here, Movant did not file a direct appeal or a certiorari petition. Thus, his one year commenced running on the expiration of his time to file a direct appeal. His time for doing so expired 14 days after entry of the amended judgment of conviction. *See* Federal

---

[1] Later commencement times can also result from an impediment, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2255(2) and (4). Movant does not assert either of these apply.

6

Rule of Appellate Procedure 4(b)(1)(A). The Amended Judgment (CR Doc. 78) was entered on September 24, 2012, and filed September 25, 2012. Thus, Movant had through Tuesday, October 9, 2012 to file his direct appeal. He did not do so, and accordingly his judgment of conviction became final thereafter, on October 10, 2012. Accordingly, Movant's one year expired on October 9, 2013.

Thus, his Amended Motion (Doc. 4), filed July 11, 2016, was over two years and nine months delinquent. Even if his Amended Motion could relate back to his original Motion (Doc. 1), *see* Fed. R. Civ. P. 15(c), it was not filed until March 28, 2016, and was over two years and five months delinquent.

**<u>Mailbox Rule and Lost Motion</u>** – Movant argues in his Response (Doc. 11) to the Court's Order to Show Cause that his motion was timely because he had "placed a 2255 motion in the prison mailbox on July 11, 2013." (*Id.* at 1.)

"In determining when a *pro se* state or federal petition is filed, the 'mailbox' rule applies. A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

But, as pointed out by Respondent, Movant's original Motion (Doc. 1) was dated March 23, 2016, belying his assertion that it had been prepared prior to July 11, 2013.

Moreover, Movant proffers no evidence to support his claim of having earlier prepared and deposited in the prison mail a 2255 motion. His Response (Doc. 11) to the Court's Order to Show Cause is not verified, and he presents no declaration supporting his claim, no documentary evidence showing his delivery to prison officials such as a postage receipt, etc., and does not even supply a copy of his earlier motion.

Further, the credibility of his naked assertion to having earlier submitted such a motion is denigrated by his failure to assert an earlier attempt at filing in his non-form-based original Motion (Doc. 1), nor to even address it in his form-based Amended Motion in response to explicit questions in the form regarding the timeliness of his motion, including quotations of the limitations period statute. (*See* Doc. 4 at 9-10.) The credibility is further denigrated by the fact that Movant's original Motion (Doc. 1) was

not denominated as a 2255 motion, but was instead labelled as a "Motion to Compel Specific Performance of a Plea Agreement," and contained no reference to 28 U.S.C. § 2255. Indeed, the Court was required to construe the motion as a motion to vacate under § 2255. (*See* Order 6/22/16, Doc. 3.)

Accordingly, the undersigned finds that no earlier 2255 motion was delivered to prison officials for mailing.

Moreover, even if such a motion were submitted for mailing, Movant proffers nothing to show that the same claims were raised in it which are raised in his Amended Motion (Doc. 4). Rule 15(c) provides that an "amendment of a pleading relates back to the date of the original pleading when . . . (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." However, an amended habeas petition "does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). The original and amended claims must, instead, be "tied to a common core of operative facts." *Id*. at 664.

Indeed, the claims asserted in Movant's Amended Motion (Doc. 4) are based on ineffective assistance of counsel and that his plea was involuntary because he was medicated. His original Motion (Doc. 1) was based on the government's failure to perform under the terms of the plea agreement. Thus, his claims in his Amended Motion would not relate back to his original Motion, let alone some earlier unfiled motion.

**Equitable Tolling** - In *U.S. v. Battles*, 362 F.3d 1195 (9th Cir. 2004), the Ninth Circuit held the statute of limitations under 28 U.S.C. § 2255 may be equitably tolled.

> A § 2255 movant is entitled to equitable tolling "only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." The movant must show that the extraordinary circumstances " 'were the cause of his untimeliness.' "

*United States v. Buckles*, 647 F.3d 883, 889 (9th Cir. 2011) (citations omitted). Movant

bears the burden of proof on the existence of cause for equitable tolling. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Nothing in the record provides a basis for equitable tolling.

Even if it were assumed that Movant had attempt to file a 2255 motion in July, 2013, his failure to take any action to follow up on it for the ensuing 32 months would preclude equitable tolling. "If the person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2nd Cir. 2000). *See also Guillory v. Roe*, 329 F.3d 1015, 1018, n.1 (9th Cir. 2003).

**Actual Innocence** - Similarly, to avoid a miscarriage of justice, the habeas statute of limitations does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013). But here, Movant makes no claim of actual innocence.

**Conclusion** - Movant's Amended Motion to Vacate is untimely, and must be dismissed with prejudice.

### B. OTHER DEFENSES

Because the undersigned finds Movant's Motion plainly barred by the habeas statute of limitations, Respondent's other defenses (waiver and lack of merit) are not addressed.

### IV. CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2255 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a

proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Motion to Vacate is brought pursuant to 28 U.S.C. § 2255, and challenges Movant's federal criminal judgment or sentence. The recommendations if accepted will result in Movant's Motion being resolved adversely to Movant. Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be on procedural grounds. Under the reasoning set forth herein, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Motion to Vacate, a certificate of appealability should be denied.

## V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Movant's Amended Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed July 11, 2016

(Doc. 4) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See also* Rule 10, Rules Governing Section 2255 Proceedings. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues, *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*), and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: April 12, 2017

16-8122r RR 17 02 28 on HC.docx

James F. Metcalf
United States Magistrate Judge